UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| INNOVATIVE SPORTS MANAGEMENT, INC., d/b/a INTEGRATED SPORTS MEDIA, <br><br> Plaintiff, <br><br> v. <br><br> NANCY SERNA, <br> d/b/a RANCHO LA PUPUSA, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil Action No. <br> 19-11929-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION FOR DEFAULT JUDGMENT**

**SAYLOR, C.J.**

This lawsuit alleges piracy of a televised sports broadcast in violation of the Federal Communications Act, 47 U.S.C. § 605, and the Cable Communications Policy Act, 47 U.S.C. § 553. Plaintiff Innovative Sports Management, Inc., doing business as Integrated Sports Media ("ISM"), is a television programming distributor that owns exclusive rights to broadcast a soccer match that aired on June 2, 2019. The complaint alleges that defendant Nancy Serna, doing business as the restaurant Rancho La Pupusa, illegally exhibited the broadcast to patrons of the restaurant without purchasing a commercial license to do so. The defendant has defaulted; the Court must now ascertain the amount of damages to be assessed. Plaintiff now seeks $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II), and an additional $10,000 in enhanced damages due to defendant's allegedly willful violation pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

The Court must first determine whether ISM is entitled to recover under 47 U.S.C. § 605, which applies to the theft of "radio" transmissions, as opposed to 47 U.S.C. § 553, which applies to the theft of "cable" transmissions. The former statute provides for greater potential recovery of damages. The Court must then consider the amount of compensatory damages (either statutory or actual) to be awarded and the extent to which enhanced damages should be awarded.

For the reasons set forth below, the Court concludes that complaint has stated a claim for recovery under 47 U.S.C. § 605. Furthermore, the Court finds that the appropriate amount of compensatory damages is $750, and the appropriate amount of enhanced damages is $900.

## I.     Background

### A.     Factual Background

The relevant facts are summarized below as set forth in the complaint unless otherwise noted.[1]

Innovative Sports Management, doing business as Integrated Sports Media, is a television programming distributor based in New Jersey. (Compl. ¶ 5). Nancy Serna is an individual who resides in Chelsea, Massachusetts. (*Id.* ¶ 7). She is the officer, director, shareholder, and/or principal manager of a restaurant called Rancho La Pupusa, located at 36 2nd Street, Chelsea, Massachusetts. (*Id.* ¶ 8).

ISM owns the rights to broadcast "Pre-Copa America 2019: El Salvador v. Haiti," a pay-per-view soccer match that aired on June 2, 2019. (*Id.* ¶ 16). The broadcast originated by

---

[1] Because defendant has defaulted for failure to plead or otherwise defend, it is "taken to have conceded the truth of the factual allegations in the complaint as establishing the grounds for liability as to which damages will be calculated." *Ortiz-Gonzalez v. Fonovisa*, 277 F.3d 59, 62-63 (1st Cir. 2002) (quoting *Franco v. Selective Ins. Co.*, 184 F.3d 4, 9 n.3 (1st Cir. 1999)). Before entering a default judgment, a court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency. *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992). On a motion for default judgment, a court may also consider any affidavits or evidence on the record. *See KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 17-20 (1st Cir. 2003).

satellite uplink and was subsequently transmitted to cable systems and satellite companies by satellite signal. (*Id.* ¶ 17). Once transmitted, the broadcast was then retransmitted using cable television networks, closed circuit television, or the Internet. (*Id.* ¶ 16-19). ISM enters into sublicensing agreements with various companies, which for a fee allows them to "unscramble" the broadcast and publicly exhibit the program to their patrons. (*Id.* ¶ 18). The sublicensing fee for this program for businesses with a seating capacity of 1-50, such as Rancho La Pupusa, is $750. (Pl. Mot. for Default J. 8; Jacobs Aff. Ex. A, CCTV Rate Card).

ISM also licenses its programs for non-commercial, private viewing at "residential rates" that are significantly lower than the rates charged to businesses. (Compl. ¶ 19). Private consumers can access the program through a website, which includes in its terms of service the statement that the broadcast is intended for non-commercial, personal use only. (*Id*. ¶ 20).

Rancho La Pupusa did not license the June 2 soccer program from ISM for commercial display. (*Id.* ¶¶ 21-23). It appears that no business in Massachusetts licensed the June 2 program from ISM. (Jacobs Aff. ¶ 7; Jacobs Aff. Ex. B, June 2, 2019 El Salvador v. Haiti Massachusetts Legal List (zero entries)).

On June 2, 2019, at 5:10 PM, Larry Davis, an "auditor" hired by ISM to canvass and identify businesses exhibiting the program without authorization, entered Rancho La Pupusa. (Pl. Mot. at 3; Jacobs Aff. ¶¶ 9, 12). He observed two television sets airing the program, and observed that the capacity of the restaurant was between 1-50. (Pl. Mot. at 3; Jacobs Aff. ¶ 13). He took a 54-second video of this encounter, which depicts him opening the front door of the restaurant, panning the camera around from the doorway, exiting the restaurant, and then

focusing on the exterior of the restaurant and the sign that reads "Rancho Las Pupusas."[2] (Rancho La Pupusa Site Inspection Video).[3] The portion of the video taken inside the restaurant shows five to ten people standing and sitting inside, some of them holding glass bottles, and a TV screen that appears to be playing a soccer match. (*Id.*). The restaurant itself appears to be one room, built on the first floor of a small three-story residential building. (*Id.*). Its interior appears to be able to accommodate 20-30 people. (*Id.*).

There is no information about how Rancho La Pupusa obtained the program without paying the licensing fee. ISM sets forth several possible methods that the restaurant may have employed: purchasing a license for the program at the "residential rate" and displaying it in a commercial context; physically relocating a cable or satellite receiver from a private residence into the business; intercepting the broadcast as it was transmitted by satellite; intercepting the broadcast as it was transmitted by cable lines; or illegally streaming the program over the internet using "over-the-top" technology. (Compl. ¶¶ 21-23; Jacobs Aff. ¶¶ 15-17). Piracy of ISM's programs requires affirmative acts to subvert the licensing requirement; such programming cannot be mistakenly or innocently intercepted. (Jacobs Aff. ¶ 14).

**B.     Procedural Background**

ISM filed this suit on September 11, 2019. The complaint alleges unauthorized interception of communication by radio in violation of 47 U.S.C. § 605 (Count 1) and unauthorized interception or reception of communication by cable in violation of 47 U.S.C. § 553 (Count 2). ISM served a summons upon Serna on October 29, 2019, and her answer was

---

[2] The sign outside of the restaurant reads "Rancho Las Pupusas," but plaintiff consistently refers to the restaurant as "Rancho La Pupusa." Because defendant has not entered an appearance to clarify or correct the name, the Court will refer to the establishment as "Rancho La Pupusa."

[3] Plaintiff included a link to the video, *available at* https://www.dropbox.com/s/3eczffxxcwjk8gy/Rancho%20La%20Pupusa%20Video.m4v?dl=0

due November 19, 2019.  Serna failed to answer or otherwise respond.  On February 21, 2020, the Court entered a notice of default as to Nancy Serna for failure to plead or otherwise defend as provided by Fed. R. Civ. P. 55(a).

On June 8, 2020, ISM filed a motion for default judgment.  The motion seeks judgment against Serna as to Count 1; $10,000 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); and $10,000 in enhanced damages for willful conduct pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

## II.  Analysis

A default judgment may be entered without a hearing under Fed. R. Civ. P. 55 if "a court has jurisdiction over the subject matter and parties, the allegations in the complaint state a specific, cognizable claim for relief, and the defaulted party had fair notice of its opportunity to object." *In re The Home Restaurants, Inc.*, 285 F.3d 111, 114 (1st Cir. 2002).

### A.  Applicability of Sections 553 and 605

Before entering a default judgment, a court may examine the complaint, taking all well-pleaded factual allegations as true, to determine its legal sufficiency.  *Ramos-Falcon v. Autoridad de Energia Electrica*, 301 F.3d 1, 2 (1st Cir. 2002); *Quirindongo Pacheco v. Rolon Morales*, 953 F.2d 15, 16 (1st Cir. 1992).  On a motion for default judgment, a court may also consider any affidavits or evidence on the record.  *See KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 17-20 (1st Cir. 2003).

The complaint lists two counts, violations of 47 U.S.C. §§ 605 and 553, but plaintiff now seeks damages from defendant only for the claimed violation of § 605(a), the basis of Count 1. Section 553 provides that "[n]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized

to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a). Section 605 provides that "[n]o person not being authorized by the sender shall intercept any radio communication and divulge or publish . . . such intercepted communication to any person," and that "[n]o person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). Section 605 also proscribes the unauthorized interception of encrypted, commercially marketed "satellite cable programming," which is defined as "video programming which is transmitted via satellite and which is primarily intended for the direct receipt by cable operators for their retransmission to cable subscribers." 47 U.S.C. §§ 605(b), 605(d)(1).

The difference between the two statutes is simple: "Section 605 deals with communications traveling through the air (via radio), whereas § 553 covers communications traveling over cable wire." *Charter Commc'ns Entertainment I, DST v. Burdulis*, 460 F.3d 168, 173 (1st Cir. 2006). Whether defendant intercepted the transmissions as they were traveling through a cable, as opposed to traveling through the air via radio/satellite, is dispositive as to which statute applies. *Id.* Although the remedies under §§ 553 and 605 are similar, "§ 605 offers more effective remedies in many instances." *Id.* at 170 n.2. Section 553 authorizes statutory damages of $250 to $10,000, enhanced damages for willfulness of up to $50,000, and a discretionary award of attorneys' fees; whereas § 605 authorizes statutory damages of $1,000 to $10,000, enhanced damages for willfulness of up to $100,000, and the mandatory award of attorneys' fees. 47 U.S.C. §§ 553(c)(2), 553(c)(3), 605(e)(3)(B)(iii), 605(e)(3)(C).

Courts normally treat complaints alleging violations of both § 553 and 605 as pleading alternative claims; that is, although they may both be pleaded, a plaintiff cannot recover under

both statutes for a single act of broadcast interception. *See, e.g.*, *J & J Sports Prods. Inc. v. Cela*, 139 F. Supp. 3d 495, 500 (D. Mass. 2015) (Casper, J.) (collecting cases for the principle that complaints alleging violations of both § 553 and § 605 plead alternative claims); *J & J Sports Prods., Inc. v. Manzano*, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception."); *PPV Entertainment, LLC v. Rivera-Diaz*, 2015 WL 7681242, at *1 n.1 (D.P.R. Nov. 3, 2015) ("*Charter Communications* plainly prohibits a double recovery because . . . any incident of piracy must *either* be by wire *or* satellite . . . [E]ven on a default, a plaintiff cannot recover under both statutes for a single incident of piracy."), *report and recommendation adopted*, 2015 WL 7568594 (D.P.R. Nov. 24, 2015).

      Here, the complaint and the supporting affidavit of plaintiff's president, Doug Jacobs, allege that defendant *may* have intercepted the broadcast as it was transmitted through satellite—for example, by using an unauthorized satellite receiver, which would implicate § 605. (Compl. ¶¶ 21-23; Jacobs Aff. ¶¶ 15-17). Alternatively, the complaint and affidavit allege that defendant *may* have intercepted the broadcast as it was transmitted through cable lines—for example, by using an unauthorized cable box, physically splicing a cable line, purchasing a "residential rate" license for the cable program, or illegally streaming the program over the internet, which would implicate § 553. (*Id.*). While it is clear that defendant must have either intercepted a cable or a satellite broadcast, plaintiff has alleged no other facts tending to show that either theory is correct, such as observations of a satellite dish or cable box in defendant's restaurant. *See, e.g., J & J Sports Prods., Inc. v. Rodriguez*, 2018 WL 4204437, at *3 (D. Mass. Sept. 4, 2018) (Hillman, J.) (where plaintiff pleaded both § 553 and § 605 and alleged that a silver cable box

was visible inside defendant's business, court assumed a violation of § 553 following defendant's default). Without further discovery, which is not feasible because defendant has defaulted, plaintiff is "unable to determine the precise manner in which defendants obtained the broadcast." (Jacobs Aff. ¶ 17).

When confronted with a default by defendant and a factual record that does not clearly demonstrate whether § 553 or § 605 applies, some courts have assumed that defendants violated § 553 because that statute specifically addresses piracy of cable programming and the range of damages is lower. *See, e.g., G & G Closed Circuit Events LLC v. Duarte*, 2016 WL 1170969, at *3 (D. Mass. Mar. 25, 2016) (Hillman, J.) ("While it is clear that Defendants' establishment necessarily intercepted either a cable or satellite broadcast, it is impossible to determine from the affidavits submitted in support of its motion for default judgment . . . the mode of interception. Therefore, on this record, the Court will assume that Defendants violated § 553 by intercepting a cable program over a cable network."); *Joe Hand Promotions, Inc. v. Rajan*, 2011 WL 3295424, at *2 (D. Mass. July 28, 2011) (Hillman, M.J.) ("Plaintiff's Complaint fails to specify the type of interception alleged, whether 'over a cable wire' or the interception of radio signals. In the absence of evidence to the contrary, the Court applies the analysis used for cable theft over a cable system" and assesses damages under § 553.).

On the other hand, another court has held that when "[d]efendants are in default and have admitted all of [the broadcast owner's] allegations, [the court] will assume that they intercepted radio transmissions, because § 605 permits greater total damages." *PPV Entertainment, LLC v. Rivera-Diaz*, 2015 WL 7681242, at *1 (D.P.R. Nov. 3, 2015), *report and recommendation adopted*, 2015 WL 7568594 (D.P.R. Nov. 24, 2015).

Other courts have recommended an award of damages in compliance with both §§ 605

and 553, without necessarily deciding which statute applies to a defaulted defendant's interception of programming, when the factual record does not make the method of interception clear. *See, e.g., Joe Hand Promotions, Inc. v. Lenihan,* 2012 WL 3637833, at *2 (D. Mass. Aug. 21, 2012) (Hillman, J.) ("Given the default, Plaintiff cannot conduct discovery to determine the mode of transmission, so all that is known is that transmission could have happened via satellite or cable. Ultimately, it matters not, because I am awarding damages that (1) fall below the maximum allowed by § 553, but are above the minimum required by § 605; and (2) include an award of attorney's fees that are discretionary under § 553 and mandatory under § 605."); *Joe Hand Promotions v. Sorel*, 843 F. Supp. 2d 130, 134 (D. Mass. 2012) (Ponsor, J.) ("[T]he court questions whether Section 553(a)(1) . . . rather than Section 605(a), is the more proper provision under which to proceed. In the end, however, the particular provision does not matter since the amount of damages which the court will recommend falls well below the maximum allowed even by Section 553(a)(1)."); *J & J Sports Prods., Inc. v. Bou*, 2015 WL 8022009, at *3 (D. Mass. Oct. 1, 2015) (Robertson, M.J.) ("The undersigned recommends that the court adopt the approach taken in *Lenihan* and *Sorel* and award damages in compliance with the provisions of §§ 605 and 533 without deciding which provision applies to Defendants' interception of the Fight. Plaintiff can be compensated appropriately for the injuries it has suffered within the damages limits set out in § 553, and any such award can be crafted to also satisfy the provisions of § 605."), *report and recommendation adopted sub nom. J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, 2015 WL 8082433 (D. Mass. Dec. 7, 2015) (Mastroianni, J.).

Here, because defendant has defaulted, she has admitted all of the allegations in the complaint. The complaint and the affidavits attached to plaintiff's motion for default judgment have stated sufficient facts to support a finding that defendant intercepted the licensed program

as it was transmitted by satellite, creating liability under 47 U.S.C. § 605(a). Therefore, the complaint is legally sufficient to state a claim under § 605, and the Court will determine the appropriate damages under that statute.

### B. Compensatory Damages

Following a default, a court must make an independent determination of the damages to be awarded. *See Pope v. United States,* 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."); *Credit Lyonnais Sec. (USA), Inc., v. Alcantara,* 183 F.3d 151, 155 (2nd Cir. 1999) ("Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.") (citations omitted); *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.,* 722 F.2d 1319, 1323 (7th Cir. 1983); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Following the entry of default, a court may conduct a hearing in order to "conduct an accounting" or "determine the amount of damages," but it is not required to do so. Fed. R. Civ. P. 55(b)(2).

Section 605(e)(3)(C)(i)(I) authorizes an aggrieved party to recover "actual damages suffered . . . as a result of the violation" from a party who has violated § 605(a). Alternatively, § 605(e)(3)(C)(i)(II) authorizes statutory damages of $1,000 to $10,000 for each violation of § 605(a), "as the court considers just."[4] Here, plaintiff suffered actual damages of $750, the price

---

[4] The analogous penalties section of § 553 allows the aggrieved party to recover actual damages *or* statutory damages in a range of $250 to $10,000, "as the court considers just." 47 U.S.C. § 553(c)(3)(A).

defendant would have paid to license the program for display at its commercial establishment with a capacity of 1-50 people.

Plaintiff urges the Court to award it $10,000 in compensatory damages—the statutory maximum—in order to deter defendant and other potential pirates from engaging in similar conduct in the future. In support of this position, plaintiff alleges that defendant's behavior has caused severe financial harm to its business, because "lawful customers of ISM in Massachusetts" are placed at a competitive disadvantage to businesses that pirate the broadcasts; therefore, plaintiff contends, piracy decreases the general demand for lawful licensing of the programs and damages its business. (Jacobs Aff. ¶¶ 18-21). However, plaintiff does not attempt to quantify this business harm in any way. Furthermore, and in any event, it does not appear that *any* business in Massachusetts purchased a license to exhibit the June 2 program, thus rendering plaintiff's description of the harm to paying customers essentially theoretical.

The First Circuit has not identified the factors that a district court should consider in making a discretionary award of statutory damages under § 605(e)(3)(C). However, when analyzing the analogous penalties section of § 553, the court has affirmed an approach "calculat[ing] statutory damages based solely on the estimated value of the services stolen, without consideration of other harms to [the owner of the programming] or of other policies favoring deterrence." *Charter Commc'ns Entertainment I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006). This is because "although Congress did express a desire to deter cable pirates, nowhere did it key this desire for deterrence to the determination of statutory damages." *Id.* at 183. Rather, "Congress addressed the need for deterrence in other statutory provisions," including § 553(c)(2)(A), which authorizes a court to impose an injunction upon offenders, and § 553(c)(3)(B), which authorizes enhanced damages for willful conduct. *Id.*

At least one district court has applied the *Charter Communications* rule for cable piracy under § 553—that is, that a court should consider only the value of services stolen, rather than deterrence effects, when awarding statutory compensatory damages—to acts of satellite piracy under § 605, "given that the statutory language concerning damages is nearly identical between § 553 and § 605." *PPV Entertainment, LLC v. Rivera-Diaz*, 2015 WL 7681242, at *2 (D.P.R. Nov. 3, 2015), *report and recommendation adopted*, 2015 WL 7568594 (D.P.R. Nov. 24, 2015). Indeed, both statutes authorize actual damages, provide a similar statutory range of damages, authorize temporary or permanent injunctions, and provide a similar range of enhanced damages for willfulness. Other courts, without expressly creating such a rule, have awarded statutory damages equal to the value of stolen services for ordinary commercial instances of piracy. *See, e.g.*, *J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, 2015 WL 8082433, at *2 (D. Mass. Dec. 7, 2015) (Mastroianni, J.) (awarding statutory damages of $2,200, the cost defendants should have paid to legally show the pirated program, under § 605 and § 553, reflecting "Congress's . . . desire that courts would set statutory damages at different amounts within [the statutory] range based on the severity of the conduct and harm to the plaintiff"); *Joe Hand Promotions, Inc. v. Lenihan*, 2012 WL 3637833, at *2 (D. Mass. Aug. 21, 2012) (Hillman, J.) (awarding statutory damages of $1100, the cost to license the pirated program, under § 605 and § 553, rejecting plaintiff's request for maximum statutory damages in excess of actual damages, and finding that "[a]ny additional award for deterrence is to be assessed under enhanced damages"); *J & J Sports Prods., Inc. v. Velez*, 2018 WL 5259664, at *3 (D. Mass. Oct. 3, 2018) (Robertson, M.J.) (awarding statutory damages of $800, the amount defendants should have paid to broadcast the pirated program, under § 605 and § 553, because "plaintiff ha[d] not shown any actual damages beyond that amount"), *report and recommendation adopted*, 2018 WL 5251746

(D. Mass. Oct. 19, 2018) (Mastroianni, J.).

Taking all of this into account, the Court will award compensatory damages to plaintiff in the amount of $750, the amount that defendant should have paid to license and air the June 2 program. That sum represents plaintiff's actual damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(I). Plaintiff has not provided any estimate or accounting of its actual damages in excess of that amount, and awarding the statutory maximum of $10,000 would be grossly out of proportion to the severity of defendant's offense, which involved a single act of piracy, broadcasted to five to ten patrons, in a one-room restaurant/bar with a capacity of no more than 50. Any additional award for deterrence will be evaluated separately under the provision for enhanced damages.

### C. Enhanced Damages for Willfulness

In addition to compensatory damages, plaintiff seeks $10,000 in enhanced damages for defendant's willful conduct. Section 605(e)(3)(C)(ii) authorizes enhanced damages of up to $100,000 for acts of satellite piracy committed "willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii).[5]

In the context of a motion for default judgment, the Court will accept plaintiff's assertion that any act of satellite piracy committed by defendant must have been "willful" and deliberate, because it is impossible for a person to intercept the program accidentally. (Jacobs Aff. ¶ 14). Furthermore, the violation was plausibly committed "for purposes of . . . commercial advantage or private financial gain," as the broadcast was shown at a restaurant as an inducement for patrons to purchase food and beverages while watching the soccer game. Accordingly, the Court

---

[5] The analogous penalties section of § 553 authorizes enhanced damages of up to $50,000 for acts of cable piracy committed "willfully and for purposes of commercial advantage or private financial gain." 47 U.S.C. § 553(c)(3)(B).

finds that enhanced damages for a "willful" violation "for purposes of direct or indirect commercial advantage or private financial gain" are merited in this case.

Plaintiff requests an award of $10,000 in enhanced damages, an amount well in excess of actual damages, for its deterrent effect on defendant and similarly situated businesses. The Court finds that it is appropriate to award enhanced damages in excess of actual damages for deterrence purposes; to hold otherwise and find defendant liable only for $750 in actual damages would, in essence, grant defendant an interest-free loan for the cost to license the program. *See, e.g.*, *Charter Commc'ns Entertainment I, DST v. Burdulis*, 460 F.3d 168, 181 (1st Cir. 2006) (finding the ends of deterrence served by the provision for enhanced damages for willfulness in 47 U.S.C. § 553). However, deterrence should not be the only factor to consider. The Court should also consider the severity of defendant's offense, which may be measured by such factors as size of the audience, size of the business, whether the business is a repeat offender, and the financial benefit to the business (for example, whether the business charged a cover fee or heavily advertised the pirated broadcast). Further, the enhanced damages should have some reasonable relationship to actual damages. *See, e.g., Charter Commc'ns Entertainment I, LLC v. Burdulis,* 367 F. Supp. 2d. 16, 32 n.21 (D. Mass. 2005) (Saylor, J.) ("[F]actors to be considered in awarding enhanced damages for willfulness" may include "(1) repeated violations over time, (2) substantial monetary gains, (3) significant actual damages, (4) advertising for the stolen programming, and (5) charging a cover or a premium for drinks or food." (quoting *Entertainment by J & J, Inc. v. Friends II, Inc*, 2003 WL 1990414, at *4 (S.D.N.Y. Apr. 25, 2003)), *aff'd*, 460 F.3d 168 (1st Cir. 2006); *Joe Hand Promotions, Inc. v. Lenihan*, 2012 WL 3637833, at *3 (D. Mass. Aug. 21, 2012) (Hillman, J.) (awarding $1,100 in actual damages and $1,000 in enhanced damages under § 605, based on a bar's illegal broadcast of a program to 18 patrons, where the

bar did not charge a cover, advertise the event, or repeatedly violate the statute); *Joe Hand Promotions v. Sorel*, 843 F. Supp. 2d 130, 134-35 (D. Mass. 2012) (Ponsor, J.) (awarding $4,000 in compensatory damages and $2,500 in enhanced damages under § 605 and § 553, where lounge illegally broadcast program to 16 patrons on one of several television screens and did not charge cover); *J & J Sports Prods., Inc. v. Jose Bou & Salsarengue, Inc.*, 2015 WL 8082433, at *2 (D. Mass. Dec. 7, 2015) (Mastroianni, J.) (awarding $2,200 in actual damages and $2,000 in enhanced damages under § 553 and § 605, where bar illegally aired a boxing match to 10-30 patrons, most of whom were watching a different program, and did not charge a cover fee); *G & G Closed Circuit Events LLC v. Duarte*, 2016 WL 1170969, at *4 (D. Mass. Mar. 25, 2016) (Hillman, J.) (awarding $600 in actual damages and $3500 in enhanced damages under § 553 because it was not defendants' first violation); *Joe Hand Promotions, Inc. v. Patton*, 2011 WL 6002475, at *3 (D. Mass. Nov. 29, 2011) (Saylor, J.) (awarding $750 in actual damages and $750 in enhanced damages under § 553 for an "ordinary in scale" violation, in which pub displayed pirated boxing match on one television screen to 15 patrons); *PPV Entertainment, LLC v. Rivera-Diaz*, 2015 WL 7681242, at *2 (D.P.R. Nov. 3, 2015), *report and recommendation adopted*, 2015 WL 7568594 (D.P.R. Nov. 24, 2015) (awarding $1,250 in actual damages and $1,250 in enhanced damages under § 605, where 30 people watched a pirated event at defendant's bar, reasoning that "for the typical owner of a small bar in Puerto Rico, [the $100,000 fine requested by plaintiff] would be ruinous . . . [and] such a result unjust."). *See also State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (when evaluating punitive damages, whose purpose is "deterrence and retribution," "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," and punitive-to-compensatory-damages ratios exceeding four-to-one "might be close to

that line of constitutional impropriety.")

Here, plaintiff has not shown that defendant's violation was egregious or extraordinary in scale. Defendant exhibited one soccer match to about five to ten patrons in a one-room, one-story restaurant whose capacity was certainly less than 50, and more likely closer to 20. The restaurant appears to be a small business carved out of one corner of an older building in a low-traffic, residential, middle- or lower-income neighborhood. There are no allegations that defendant charged a cover fee, advertised the program, or was a repeat violator. While some measure of enhanced damages is appropriate to deter future piracy, awarding $10,000—an amount thirteen times greater than the actual damages suffered by plaintiff—would be excessive. Based on these factors, the Court awards enhanced damages of $900 for plaintiff's willful violation pursuant to 47 U.S.C. § 605(e)(3)(C)(ii).

### III. Conclusion

For the reasons stated above, the Court awards Innovative Sports Management, d/b/a Integrated Sports Media, the following damages against Nancy Serna, d/b/a Rancho La Pupusa:

1. Compensatory damages in the amount of $750; and
2. Enhanced damages for a "willful" violation in the amount of $900.

The clerk is directed to enter judgment for plaintiff as to Count 1 in that amount.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated: October 15, 2020   Chief Judge, United States District Court